IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CV-1559-RJ

| | |
|---|---|
| AMANDA COPPEDGE COOK,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*, *et al.*,<br><br>Defendants. | <u>ORDER</u> |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-18, -19, -20]. Amanda Coppedge Cook ("Claimant") filed this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB and SSI on August 17, 2023, alleging disability beginning August 1, 2023. (R. 133, 366–76). The claims were denied initially and upon reconsideration. (R. 204–53). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on January 28, 2025, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 157–203). On May 5, 2025, the ALJ issued a decision denying Claimant's request for benefits. (R. 130–56). The Appeals Council dismissed Claimant's request for review as untimely and on the basis of failing to set forth

good cause for the late filing. (R. 1–4, 38–45). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date of August 1, 2023. (R. 135–36). Next, at step two, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the lumbar spine with mild canal stenosis at L3-4; plantar fasciitis; obesity; diabetes mellitus; bipolar

disorder; posttraumatic stress disorder ("PTSD"); attention deficit hyperactivity disorder ("ADHD"); migraine headache disorder; bilateral carpal tunnel syndrome; and cervical radiculopathy. (R. 136–41). Claimant's medically determinable physical impairments of polycystic ovary syndrome ("PCOS"); fatty liver disease; gastroesophageal reflux disease ("GERD"); and high cholesterol were found to be not severe. (R. 141). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 141–43). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 142–43).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> [L]ifting, carrying, pushing and/or pulling no more than 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing and/or walking for six hours in an eight-hour workday. They can climb ramps and stairs frequently and climb ladders, ropes, or scaffolds occasionally, balance as defined in the Selected Characteristics of Occupations (SCO) frequently, and stoop, kneel, crouch, and crawl frequently. They can frequently but not constantly handle and finger bilaterally. They are capable of understanding, remembering, and carrying out simple instructions. They can use judgment to make simple work-related decisions; and can sustain concentration, attention, and pace sufficient to carry out simple tasks for two-hour intervals over the course of an eight-hour workday. They can have frequent interaction with coworkers and supervisors, and occasional interaction with the public. They should have no more than occasional changes in the work setting, and they cannot work at a specific production rate or pace such as

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

assembly line work or hourly production quota.

(R. 143–46). In making this assessment, the ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (R. 144). At step four, the ALJ concluded Claimant was unable to perform her past relevant work. (R. 146). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 147–48).

## V. DISCUSSION

Claimant contends the ALJ erred (1) in failing to address evidence from Dr. Fadi Deeb, dated September 13, 2024, and (2) by not properly considering her mental health limitations. Pl.'s Mem. [DE-18] at 2. Defendant contends the ALJ properly evaluated Claimant's impairments and provided a well-reasoned analysis of why Claimant's impairments do not preclude her from performing any work in the national economy. Def.'s Mem. [DE-19] at 2.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

**i. Medical Opinion Evidence**

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the

treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2).

Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

The ALJ addressed Dr. Deeb's September 13, 2024 medical opinion in the RFC determination. (R. 146, 1788–89). The ALJ acknowledged that Dr. Deeb indicated Claimant could lift no more than ten pounds but then went on to describe Dr. Deeb's conclusions as unsupported by his own findings and inconsistent with other objective findings and observations in the record. (R. 146, 2266–81). The ALJ noted that Dr. Deeb appeared to be Claimant's primary care provider and that his treatment notes primarily dealt with her chronic conditions, which are generally controlled, not her musculoskeletal issues. (R. 146, 2266–81). Accordingly, the ALJ did not find

Dr. Deeb's opinion to be persuasive. The ALJ was not required to adopt Dr. Deeb's lifting limitations in the RFC determination. As the ALJ appropriately considered the supportability and consistency of Dr. Deeb's opinion, there was no error in the ALJ's evaluation, and remand is not warranted.

**ii. Mental Health Limitations**

Claimant contends the ALJ did not properly consider her mental health limitations. Pl.'s Mem. [DE-18] at 2. At step two, the ALJ found Claimant had several severe impairments, including bipolar disorder, PTSD, and ADHD. (R. 136). In the RFC determination, the ALJ described Claimant's latest mental health records as indicating she had normal mental status examinations. (R. 145). Claimant's ADHD symptoms were appropriately regulated, she was managing stressors well, and she continued to be stable. (R. 140, 145, 1950, 2412). As described above, applying the special technique prescribed by the regulations described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c), the ALJ found that Claimant's mental impairments have resulted in a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 142–43).

Claimant asks this court to consider a letter from Lea Ann Cenname, PA-C. Pl.'s Mem. [DE-18] at 2. The letter, which Claimant attached to her brief, was written by a provider on January 9, 2026, in support of Claimant's application for a mortgage loan modification. [DE-18-1] at 1. The letter indicates due to the combination of Claimant's physical and mental conditions she has functional limitations that interfere with her ability to maintain employment. *Id.* This letter was drafted after the ALJ hearing decision; accordingly, it was not considered by the ALJ.

Section 42 U.S.C. § 405(g) provides that the court "may at any time order additional

evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Bryant v. Astrue*, No. 7:11-CV-00054-D, 2012 WL 895425, at *6 (E.D.N.C. Feb. 10, 2012) (quoting *Smith v. Astrue*, No. 5:10–cv–219–FL, 2011 WL 3905509, at *2 (E.D.N.C. Sept. 2, 2011)), *adopted*, 2012 WL 896147 (E.D.N.C. Mar. 15, 2012). The Commissioner contends although the letter may be "new" it is not material. Def.'s Mem. [DE-19] at 11.

The record contains Claimant's mental health records from January 31, 2021, (R. 668–72), through December 4, 2024, (R. 2406–13). The ALJ does not indicate there is a lack of evidence to determine whether Claimant has limitations due to her mental health impairments, and readily cites to the record throughout the opinion noting that although Claimant does have problems with learning, focus, working, and regulating emotions, it also indicates she is stable on her medications and her mental impairments cause moderate limitations as opposed to "marked" or "extreme." (R. 142–43). The letter is vague and conclusory, and the ALJ reviewed records concerning Claimant's mental limitations from the relevant period. (R. 2342–2413). Accordingly, the letter Claimant attached to her brief does not provide any additional information that would have changed the outcome of the ALJ's opinion. The ALJ appropriately considered Claimant's mental health limitations, applying the prescribed special technique and supporting conclusions with record evidence.

In response to Commissioner's assertion that the letter was not new and material, Claimant submitted four additional letters, [DE-21], with her response, [DE-20], which she asserts are clearly new and material. The first letter, again from Lea Anne Cenname, PA-C at the Haymount

Institute for Psychological Services, was drafted March 9, 2026, and lists Claimant's psychiatric diagnoses and indicates they interfere with her ability to function in a work environment. [DE-21]. Again, this note is conclusory and offers no new or material information that would have changed the outcome of the ALJ's opinion. The second letter, from the North Carolina Department of Health and Human Services ("NCDHHS") indicates Claimant's referral for supported employment services were withdrawn based on medical documentation from her primary care provider stating her mental and physical health were not stable enough to move forward with job placement. [DE-21-1]. This letter indicates NCDHHS based the withdrawal of employment services exclusively on the note from a physician. As explained above, the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative findings, including those from Claimant's medical sources. The NCDHHS letter provides no additional information that would have changed the outcome of the ALJ's opinion. The third letter, from Claimant's primary care physician, Dr. Deeb, lists Claimant's active medical diagnoses and describes her limitations again as being unable to lift more than ten pounds. [DE-21-2]. The ALJ already discussed Dr. Deeb's medical opinion and explained why it was found unsupported. The final letter is a confidential vocational evaluation report from NCDHHS indicating what types of jobs may be best suited to Claimant. [DE-21-3]. This letter does not indicate Claimant is completely disabled, but is merely an opinion about what type of work she would be suited to perform. Accordingly, there is no new or material evidence that requires remand.

**iii. ALJ's Role ("Lay Opinion/Medical Opinion")**

In Claimant's response, she indicates the ALJ is not suited to make findings regarding Claimant's limitations, as the ALJ does not have a license to practice medicine. Pl.'s Resp. [DE-20] at 1. The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2). The ALJ here considered Claimant's testimony, medical opinion evidence, and treatment records to formulate the RFC in accordance with the law. The ALJ is not required to adopt Claimant's physician's medical opinions, but instead must consider their supportability and consistency, as described above. Accordingly, this argument provides no basis for remand.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, the 24th day of November, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge